IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| SEGUNDO NOLBERTO GUALPA - LUMBI, | CASE NO. 4:26-cv-0038 |
| Petitioner | DISTRICT JUDGE JEFFREY J. HELMICK |
| vs. | MAGISTRATE JUDGE JAMES E. GRIMES JR. |
| WARDEN KENNETH HOOVER, et al., | |
| Respondents. | **REPORT AND RECOMMENDATION** |

Petitioner Segundo Nolberto Gualpa-Lumbi has filed a petition for writ of habeas corpus together with complaint for injunctive relief and an application for a temporary restraining order. Doc. 1. The Court referred this matter to a Magistrate Judge under Local Rule 72.2 for the preparation of a Report and Recommendation. For the following reasons, I recommend that the Court grant Gualpa's petition.

*Factual Background and Immigration Court Proceedings*[1]

Gualpa was born in 1986. Doc. 5-3, at 1. He crossed the Rio Grande and entered the United States without being inspected on July 27, 2022. Doc. 1-4, at 1; Doc. 5-3, at 3. The next day a Border Patrol agent encountered Gualpa and issued him a Notice to Appear, placing him in immigration removal proceedings. Doc. 5-1; Doc. 5-3, at 3.

The Notice to Appear did not allege that Gualpa was an arriving alien. Rather, it alleged that he was "an alien present in the United States who ha[d] not been admitted or paroled." Doc. 5-1, at 1. The Notice to Appear directed Gualpa to appear for a removal hearing in December 2023, in Boston Massachusetts. *Id*.

In light of later developments and Respondents' argument, Doc. 5, at 23, it is evident that immigration authorities exercised their discretion under 8 U.S.C. § 1182(d)(5)(A) and paroled Gualpa into the United States.[2] Indeed, the

---

[1]    "At this stage of proceedings, allegations in the Petition are accepted as true and construed in Petitioner's favor." *See Alexander v. N. Bureau of Prisons*, 419 F. App'x 544, 545-46 (6th Cir. 2011) (describing the pleadings standard and applying to the § 2243 stage in a § 2241 petition). In addition, "documents attached to the pleadings become part of the pleadings and may be considered" by the Court. *Id.* at 546 (quoting *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 335 (6th Cir. 2007)).

[2]    Section 1182(d)(5)(A) provides that:

> The Secretary of Homeland Security may, except as provided in subparagraph (B) or in section 1184(f) of this title, in his discretion parole into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit

parties do not claim that authorities granted Gualpa lawful status on July 28, 2022—they instead placed Gualpa in removal proceedings. Release on parole is the only plausible explanation for the fact that Gualpa was not detained when authorities issued him a Notice to Appear. This necessarily means that immigration authorities determined that Gualpa was not subject to mandatory detention pending his removal proceedings, which was scheduled for approximately 18 months after authorities initially encountered him.

According to Gualpa's undisputed sworn declaration, which Respondents don't discuss, Gualpa admitted removability in November 2024 and applied for asylum in December 2024. Doc. 1-4, at 2. In light of Gualpa's asylum application, U.S. Citizenship and Immigration Services issued him an employment authorization document valid as of July 29, 2025. Doc. 1-8, at 9.

On July 30, 2025, officials with Immigration and Customs Enforcement encountered Gualpa during a vehicle stop in New York. Doc. 5-3, at 3. Those officials placed him in immigration detention at that point. *Id*. Although Respondents filed a return and a Court-ordered supplement and submitted

_____

any alien applying for admission to the United States, but such parole of such alien shall not be regarded as an admission of the alien and when the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States.

3

evidence, they did not submit evidence that immigration officials revoked Gualpa's parole before detaining him. *See Mata Velasquez v. Kurzdorfer*, 794 F. Supp. 3d 128, 145 (W.D.N.Y. 2025); *see also Jarrett v. Raycraft*, No. 1:26-cv-244, 2026 WL 319044, at *8–9 (W.D. Mich. Feb. 6, 2026).

In August 2025, an immigration judge denied Gualpa's request that the immigration judge review Gualpa's custody status. *See* Doc. 5-2. The immigration judge held that he lacked "jurisdiction to set bond." *Id*. at 1 (citing *Matter of Q*, 29 I. & N. Dec. 66 (BIA 2025)). The immigration judge denied a second motion for bond redetermination in December 2025, stating that he "still d[id] not have jurisdiction to set bond." Doc. 5-4, at 1.  In late December 2025, Gualpa filed an appeal with the Board of Immigration Appeals. Doc. 5-5.

*Gualpa's habeas petition*

On January 7, 2026, Gualpa filed a petition for writ of habeas corpus together with a complaint for injunctive relief and an application for a temporary restraining order. Doc. 1. Gualpa "challenges the legality of his ongoing civil immigration detention and seeks" release from detention or a bond hearing. *Id*. at 2. He alleges that his detention without bond violates the Due Process Clause and the Immigration and Nationality Act, and offers that he has no criminal history and is an essential caregiver for his six-year-old son, who has a serious medical condition. *Id*. at 3.

Respondents filed a partial opposition. Doc. 5. Respondents contend that the Court lacks jurisdiction to review Gualpa's claims. *Id*. at 9–13.[3] They also argue that Gualpa failed to exhaust administrative remedies. *Id*. at 13–14. Turning the merits, Respondents argue that Gualpa "is properly detained under 8 U.S.C. § 1225." *Id*. at 14–23. They add that applicants for admission may only be released from detention under the parole authority found at 8 U.S.C. § 1182(d)(5). *Id*. at 23. Respondents conclude that 8 U.S.C. § 1226 does not affect their authority to detain Gualpa under 8 U.S.C. § 1225. *Id*. at 23–24.

Respondents do not address Gualpa's constitutional arguments. They also don't discuss—and thus don't object to—Gualpa's request for a temporary restraining order and a preliminary injunction.

**Legal Standard**

Under 28 U.S.C. § 2241, a district court may grant a writ of habeas corpus to any person who demonstrates that he is in custody in violation of the Constitution or laws of the United States. 28 U.S.C. § 2241(c)(3). An alien may challenge the lawfulness of immigration detention through a writ of habeas corpus. *See INS v. St. Cyr*, 533 U.S. 289, 301 (2001) (observing that "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest.");

---

[3]  The Court cites the CM/ECF-generated page numbers at the top of Respondents' return.

*see also Demore v. Kim*, 538 U.S. 510, 517 (2003); *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

Although the Court lacks jurisdiction in habeas over issues such as challenges to the legality of a removal order, *see Hamama v. Adducci*, 912 F.3d 869, 876 (6th Cir. 2018), it has jurisdiction to consider whether a noncitizen is lawfully detained, *see Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 117 (2020) (describing habeas corpus as the "'appropriate remedy to'" determine the legality of a person's custody) (quoting 3 Commentaries on the Constitution of the United States § 1333, p. 206 (1833)).

**Discussion**

*1.  The Court Has Jurisdiction Over Gualpa's Petition.*

Respondents[4] argue that under 8 U.S.C. § 1252(b)(9) and (g), this Court lacks jurisdiction to review Gualpa's petition. *See* Doc. 5, at 9–13. Before discussing these provisions, it is worth noting the Section 1252 is entitled "judicial review of orders of removal." While "section headings cannot limit the plain meaning of a statutory text, 'they supply cues' as to what Congress intended." *Merit Mgmt. Grp., LP v. FTI Consulting, Inc.*, 583 U.S. 366, 380

---

[4]     The proper respondent in an immigration habeas for a noncitizen detained in this District is the Field Director of the Detroit Field Office for U.S. Immigration and Customs Enforcement. *Mendoza v. Raycraft*, No. 4:25-cv-2183, 2025 WL 3157796, at *8 (N.D. Ohio Nov. 12, 2025). The Court should therefore dismiss from this action the Director of U.S. Immigration and Customs Enforcement, the Secretary of the Department of Homeland Security, and the Attorney General. *See Roman v. Ashcroft*, 340 F.3d 314, 320 (6th Cir. 2003).

(2018) (citations omitted). So it is questionable at the start whether any of the provisions in Section 1252 would apply to Gualpa, who is not challenging an order of removal.

In any event, Respondents argue that "Section 1252(g) categorically bars jurisdiction over '*any* cause or claim by or on behalf of any alien *arising from* the decision or action by the [Secretary of Homeland Security] to *commence proceedings*, adjudicate cases, or execute removal orders against any alien.'" Doc. 5, at 9 (quoting 8 U.S.C. § 1252(g)). Respondents also argue that "[u]nder § 1252(b)(9), 'judicial review of all questions of law … including interpretation and application of statutory provisions … arising from any action taken … to remove an alien from the United States' is only proper before the appropriate court of appeals in the form of a petition for review of a final removal order." Doc. 16, at 12–13 (citing 8 U.S.C. § 1252(b)(9)).

Respondents are mistaken. *See Deng Chol A. v. Barr*, 455 F. Supp. 3d 896, 900–01 (D. Minn. 2020) (citing *Zadvydas*, 533 U.S. at 688, and *Demore*, 538 U.S. at 517).

First, Section 1252(g) does not bar, categorically or otherwise, Gualpa's claims. Section 1252(g) provides in relevant part that:

> [e]xcept as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, … no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to

7

> commence proceedings, adjudicate cases, or execute
> removal orders against any alien under this chapter.

8 U.S.C. § 1252(g). Based on this statute, Respondents argue that "the Secretary of Homeland Security's decision to *commence removal proceedings*, includes the decision to detain an alien pending such removal proceedings." Doc. 5, at 9. Respondents' position, however, ignores the Supreme Court's caution that the jurisdictional limits detailed in Section 1252(g) have a "narrow" reach, and apply only to "review of cases 'arising from' decisions 'to commence proceedings, adjudicate cases, or execute removal orders.'" *Dep't of Homeland Sec. v. Regents of the Univ. of Calif.*, 591 U.S. 1, 19 (2020) (explaining that the Supreme Court has "previously rejected as 'implausible' the Government's suggestion that § 1252(g) covers 'all claims arising from deportation proceedings' or imposes a 'general jurisdictional limitation'") (quoting *Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999)).

Indeed, the Supreme Court has made clear that Section 1252(g) "applies" "narrow[ly] … only to three discrete actions that the Attorney General may take:" the "'decision or action' to 'commence proceedings, adjudicate cases, or execute removal orders.'" *American-Arab Anti-Discrimination Comm*, 525 U.S. at 482. Outside of these three categories, the Supreme Court has noted that there are "many other decisions or actions that may be part of the deportation process," such as "the decisions to open an investigation, to surveil the suspected violation, to reschedule the deportation

8

hearing, to include various provisions in the final order that is the product of the adjudication, and to refuse reconsideration of that order." *Id*. It has therefore held that Section 1252(g) is "not relevant" to the consideration of a court's jurisdiction to consider an immigration habeas petition. *Zadvydas*, 533 U.S. at 311 n.34 (relying on *American-Arab Anti-Discrimination Comm*).

A plurality of the Supreme Court has more recently affirmed the narrow construction of Section 1252(g). *See Jennings v. Rodriquez*, 583 U.S. 281, 294 (2018) (plurality opinion). The three-justice plurality in *Jennings*, reiterated that the Court "did not interpret [the phrase 'arising from'] to sweep in any claim that can technically be said to 'arise from' the three listed actions of the Attorney General. Instead, [the Court] read the language to refer to just those three specific actions themselves." *Id.* at 294.

Here, Gualpa's claims do not challenge Respondents' efforts to commence proceedings, adjudicate cases, or execute removal orders. Instead, Gualpa asserts that his continued detention, under a mandatory detention regulation, violates his Fifth Amendment due process rights. *See* Doc. 1, at 3. The immigration judge's decision to deny Gualpa a bond hearing is not tied to a decision to *commence* removal proceedings. *Cf. Zhislin v. Reno*, 195 F.3d 810, 814 (6th Cir. 1999) (holding that Section 1252(g) does not bar review of a challenge to post-removal order detention). Gualpa's "detention does not arise from the government's 'commencement of proceedings,' which begins with the filing of an NTA in an immigration court." *Mahdawi v. Trump*, 136 F.4th 443,

450–51 (2d Cir. 2025) (quoting *Otzurk v. Hyde*, 136 F.4th 382, 396–97 (2d Cir. 2025)). Indeed, Respondents did not detain Gualpa until years after they initiated his removal proceedings.

Respondent's first jurisdictional argument, regarding Section 1252(g), thus fails. *See Kong v. United States*, 62 F.4th 608, 615 (1st Cir. 2023) ("there is no way to read [Section 1252(g)'s] legislative history as evincing 'a clear statement of congressional intent to repeal habeas jurisdiction' over all detention claims. To the contrary, § 1252(g) was passed with the understanding that collateral challenges to the legality of a petitioner's detention would not constitute 'cause[s] or claim[s]' that 'aris[e] from the decision or action by the Attorney General to ... execute removal orders.'") (citation omitted).

Second, Respondents argues that Section 1252(b)(9) bars this Court's consideration of Gualpa's claim. Under Section 1252(b)(9):

> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section. Except as otherwise provided in this section, no court shall have jurisdiction, by habeas corpus under Section 2241 of Title 38 or any other habeas corpus provision, by section 1361 or 1651 of such title, or by any other provision of law (statutory or nonstatutory), to review an order or such questions of law or fact.

8 U.S.C. § 1252(b)(9).

10

The Supreme Court has "described § 1252(b)(9) as a 'zipper clause' which "consolidate[s] 'judicial review' of immigration proceedings into one action in the court of appeals." *St. Cyr*, 533 U.S. at 313.[5] But the Court has made clear that "it applies *only* '[w]ith respect to review of an order of removal under subsection (a)(1).'" *Id.* (emphasis added). As a result, "§ 1252(b)(9) does not clearly apply to actions brought pursuant to the general habeas statute, and thus cannot repeal that statute either in part or in whole."[6] *Id.* at 314.; *see id.* at 302 (noting that the writ of habeas corpus historically "encompassed detentions based on errors of law, including the erroneous application or interpretation of statutes"); *see also Ozturk*, 136 F.4th at 399.

Instead of acknowledging *St. Cyr*, Respondents look to Justice Thomas's concurrence in *Jennings* to support their assertion that "[t]he fact that [Gualpa] is challenging the basis upon which she is detained is enough to trigger § 1252(b)(9) because 'detention is an "action taken … to remove" an

---

[5]    Congress amended the Immigration and Nationality Act in response to *St. Cyr*, to eliminate habeas as a method to review final orders of removal for criminal aliens. *See* REAL ID Act of 2005, Pub. L. 109-13. Div. B, § 106, 119 Stat. 231; *Nasrallah v. Barr*, 590 U.S. 573, 580 (2020). Importantly, although "the Real ID Act eliminate[d] a district court's jurisdiction over habeas petitions challenging final orders of removal," it "did not eliminate a district court's jurisdiction to review habeas petitions challenging an alien's detention." *Ferry v. Gonzales*, 457 F.3d 1117, 1131 (10th Cir. 2006).

[6]    In support of this aspect of their argument, Respondents cite a portion of *Jennings* that was joined only by a three-justice plurality. *See* Doc. 5, at 12. Even so, that portion "of Jennings does not support the conclusion that § 1252(b)(9) bars jurisdiction over habeas challenges to detention." *Ozturk v. Hyde*, 136 F.4th 382, 399 (2d Cir. 2025). Rather that portion "rejected the government's 'expansive interpretation of § 1252(b)(9).'" *Id.*

alien.'" Doc. 5, at 13. But this Court is bound to follow controlling Supreme Court precedent. And Gualpa is not seeking review of a final order of removal, as he is not subject to one. Instead, he challenges the constitutionality of and the purported mandatory nature of his detention without opportunity for bond.

Respondents next point to the recent decision in *Khalil v. President, United States*, 164 F.4th 259 (3d Cir. 2026). Doc. 5, at 11–12. According to Respondents, *Khalil* supports their position. True enough, the court in *Khalil* said that Khalil's "claims raise[d] legal questions challenging the government's very basis for trying to remove (and thus detaining) him," and that addressing any of those claims would require deciding whether removing Khalil would be unlawful—the very issue decided through the [petition for review] process," i.e. the process for reviewing a final order of removal. 164 F.4th at 274, 276. But the reason that Section 1252(b)(9) applied was because Khalil's specific detention challenge was intertwined with his argument challenging his removal order. As the court explained, Khalil's "one detention-specific claim" was "just [a] repackage[ing of] his challenges to his removal." *Id.* at 277. The court then admonished that "Khalil cannot plead around § 1252(b)(9) by calling his challenge to removal a challenge to his detention." *Id.* So Khalil does not help Respondents.

Respondent have not shown that Section 1252(b)(9)'s jurisdictional-bar applies to Gualpa's petition.

For all of the reasons stated, the Court should find that it possesses jurisdiction to consider Gualpa's Petition challenging the constitutionality of her detention.

### 2. *Gualpa Is Excused From Administrative Exhaustion*

Having concluded that the Court has jurisdiction to consider Gualpa's claims, the next issue is whether Gualpa has exhausted his available administrative remedies, and, if not, whether he should be excused from exhaustion.

"When 'Congress has not clearly required exhaustion, sound judicial discretion governs' whether or not exhaustion should be required." *See Shearson v. Holder*, 725 F.3d 588, 593 (6th Cir. 2013) (citation omitted). "[E]xhaustion may not be required when the administrative remedy 'does not serve the purposes behind the exhaustion doctrine[],'if the 'administrative remedies are inadequate or not efficacious," or "where pursuit of administrative remedies would be a futile gesture." *Id*. at 594 (quoting *Shawnee Coal Co. v. Andrus*, 661 F.2d 1083, 1093 (6th Cir. 1981)). "Additionally, '[e]xhaustion of administrative remedies may not be required in cases of non-frivolous constitutional challenges to an agency's procedures.'" *Id*. (quoting *Bangura v. Hansen*, 434 F.3d 487, 493 (6th Cir. 2006)).

Respondents do not claim that any statutory exhaustion requirement applies. Their position is that Gualpa was required to wait until the Board issues a decision on his bond appeal before filing his petition. Doc. 5, at 13–14.

Respondents, however, ignore Gualpa's futility arguments. *See* Doc. 1, at 12. Respondents' have thus forfeited any argument that futility should not excuse the prudential exhaustion requirement.[7]

Considering the likely outcome of Gualpa's appeal to the Board, exhaustion is futile. And dismissal on exhaustion grounds would operate to prolong any alleged due process violation, which, as is discussed below, Respondents also do not contest. This delay would impose further hardship on Gualpa and weighs against requiring administrative exhaustion. *See Shalala v. Illinois Counsel*, 529 U.S. 1, 13 (2000) ("Doctrines of 'ripeness' and 'exhaustion' contain exceptions, however, which exceptions permit early review when, for example, the legal question is 'fit' for resolution and delay means hardship[.]'").

For all of the reasons stated, the Court should determine that prudential exhaustion does not bar review of the merits of Gualpa's Petition.

> 3.  *Mandatory detention under 8 U.S.C. § 1225(b)(2) does not apply to Gualpa because he is subject to discretionary detention under 8 U.S.C. § 1226(a).*

The parties dispute whether Gualpa falls under 8 U.S.C. §§ 1225(b)(2) or 1226(a). Under Section 1225, a noncitizen "who 'arrives in the United States,' or 'is present' in this country but 'has not been admitted,' is treated as

---

[7]    It may be, as Respondents assert, that some Courts in this District have dismissed petitions for failure to exhaust. *See* Doc. 5, at 13–14. But that fact would only matter if Respondents had not forfeited challenges to Gualpa's argument that the prudential exhaustion requirement should not apply.

14

'an applicant for admission.'" *Jennings*, 283 U.S. at 287. There are two categories of applicants for admission described in Section 1225, "those covered by § 1225(b)(1) and those covered by § 1225(b)(2)." *Id*. As relevant here, Section 1225(b)(2)(A) provides that "in the case of an alien who is an *applicant for admission*, if the examining immigration officer determines that an alien *seeking admission* is not clearly and beyond a doubt entitled to be admitted, the alien *shall* be detained for a proceeding under section 1229a of this title." 8 U.S.C. § 1225(b)(2) (emphasis added). By contrast, under Section 1226(a) "an alien *may* be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a) (emphasis added). And immigration authorities "may release the alien on … bond … or … conditional parole." 8 U.S.C. § 1226(a)(2)(A), (B). Further, 8 U.S.C. § 1229a sets out the manner in which removal proceedings should occur but does not impose a detention requirement.

Respondents argue that Gualpa is subject to mandatory detention based on application of Section 1225(b)(2). Specifically, the Respondents assert that:

> § 1225 is the applicable detention authority for all applicants for admission—both arriving aliens and aliens present without admission alike, regardless of whether the alien was initially processed for expedited removal proceedings under 8 U.S.C. § 1225(b)(1) or placed directly into removal proceedings under 8 U.S.C. § 1229a—and "[b]oth [8 U.S.C. § 1225(b)(1) and (b)(2)] mandate detention ... throughout the completion of applicable proceedings," *Jennings*, 283 U.S. at 301–03, IJs do not have authority to redetermine the custody status of an alien present without admission.

15

Doc. 5, at 19. In other words, Respondents' position is that Gualpa is (1) an alien present without admission, (2) subject to removal proceedings detailed in 8 U.S.C. § 1229a, (3) both an applicant for admission and an alien seeking admission, and (4) as a result, subject to mandatory detention and "ineligible for a bond redetermination hearing before an [immigration judge]." *Id.* And Respondents' assertion that detention is mandatory is based on the language "shall be detained" found in Section 1225(b)(2). *See* Doc. 16, at 19–21.

Gualpa concedes that he entered the United States in 2022, without presenting himself at a point of entry and without having been admitted after inspection by an immigration officer. *See* Doc. 1-4, at 1. Indeed, he conceded before the immigration judge that he is removable. *See id.* at 2. Gualpa's Notice to Appear, further illustrates that he is alleged to be "an alien present in the United States who has not been admitted or paroled." Doc. 5-1, at 1. Nevertheless, authorities later released Gualpa and granted him employment authorization. And he was not detained for years before he was apprehended in July 2025.

In any event, in their return of writ, Respondents elaborate on their position that immigration judges are bound by *Matter of Yajure Hurtado* to impose mandatory detention in removal proceedings conducted under Section 1229a. *See* Doc. 5, at 18–19. Additionally, Respondents point to language in *Jennings* to the effect that Section 1225(b)(1) and (b)(2) "mandate detention … throughout the completion of applicable proceedings." *Jennings*, 583 U.S. at

16

301–03; *see* Doc. 5, at 19. Respondents, however, omit another portion of *Jennings*, in which the Court said, that "[w]hile the language of §§ 1225(b)(1) and (b)(2) is quite clear, § 1226(c) is even clearer. As noted, *§ 1226 applies to aliens already present in the United States*." 583 U.S. at 303 (emphasis added).

The heart of the parties' dispute comes down to Respondents' contention that *aliens seeking admission* and are the same as aliens who are *applicants for admission*. Doc. 5, at 20. An *applicant for admission* is defined as "[a]n alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters)." 8 U.S.C. § 1225(a)(1). By contrast, the term *seeking admission* is not defined by statute. So the Court turns to the phrase's plain or "ordinary meaning," which is often determined with reference to "grammar and dictionary definitions." *Niz-Chavez v. Garland*, 593 U.S. 155, 168–69 (2021).

The word "seek" means "to ask for," "to try to acquire or gain," or "to make an attempt." Seek, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/seek (last visited Feb. 13, 2025). Because the word *seeking* is the present participle of the verb *seek*, its use "'implies some sort of present-tense action.'" *Curillo v. Noem*, No. 1:25-cv-1340, 2025 WL 3235737, at *5 (W.D. Mich. Nov. 20, 2025) (quoting *Martinez v. Hyde*, No. CV 25-11613, 2025 WL 2084238, at *6 (D. Mass. July 24, 2025)). "'Seeking' requires

17

something more than just passively being present in the United States." *Chavez v. Dir. of Detroit Field Off.*, No. 4:25-cv-2061, 2025 WL 3187080, at \*5 (N.D. Ohio Nov. 14, 2025).

And the thing the alien must be *seeking* is "admission." *Admission* is defined as "lawful entry ... into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A). "Entry" is not defined but a commonly referenced dictionary says that it means "the act of entering." Entry, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/entry (last visited Feb. 13, 2025). And Black's Law Dictionary says that in this context, it means "[a]ny entrance of an alien into the United States, whether voluntary or involuntary." Entry, Black's Law Dictionary (12th ed. 2024).

> The Board has long defined "entry" into our country for immigration purposes to require (1) a crossing into the territorial limits of the United States; (2) inspection and admission by an immigration officer or actual and intentional evasion of inspection; and (3) freedom from official restraint.

*Lopez v. Sessions*, 851 F.3d 626, 630 (6th Cir. 2017), *abrogated on other grounds by Guerrero-Lasprilla v. Barr*, 589 U.S. 221 (2020). Putting all of this together, *seeking admission* means presently trying to cross into the United States. *See Campbell v. Almodovar*, No. 1:25-cv-09509, 2025 WL 3538351, at \*6 (S.D.N.Y. Dec. 10, 2025) (citing cases), *opinion clarified*, 2025 WL 3626099 (S.D.N.Y. Dec. 15, 2025). *But see Buenrostro-Mendez v. Bondi*, No. 25-20496, 2026 WL 323330,

at *5 (5th Cir. Feb. 6, 2026) (reaching the opposite conclusion). Gualpa, however, is not presently trying to do that.

Respondents say that their reading is compelled by the Supreme Court's decision in *Jennings*. See Doc. 5, at 20. Other courts have dispatched this argument:

> Binding Supreme Court precedent further supports the petitioner's read of the statute. In *Jennings v. Rodriguez*, the Supreme Court analyzed Sections 1225, 1226, and 1227 to determine whether "detained aliens have a statutory right to periodic bond hearings." 583 U.S. at 285. The Court made it clear that "Section 1225 authorizes 'the Government to detain certain aliens seeking admission into the country,' while Section 1226 'authorizes the Government to detain certain aliens already in the country pending the outcome of removal proceedings.'" *Sarmiento Guerrero*, 2025 WL 3214787, at *5 (quoting Jennings, 582 U.S. at 288) (emphasis in *Sarmiento Guerrero*); *see also Nielsen [v. Preap*, 586 U.S. 392, 396–97 (2019) (holding that Section 1226(a) applies to noncitizens "present in this country").
>
> The government claims that *Jennings* stands for the proposition that "[a]pplicants for admission fall into one of two categories, 'those covered by § 1225(b)(1) and those covered by § 1225(b)(2).'" (ECF No. 8 at 11 (quoting *Jennings*, 583 U.S. at 287).) The government's interpretation is not persuasive, because it takes the above language out of context. The quote upon which the government rests its theory appears in a discussion about "decid[ing] (1) who may enter the country and (2) who may stay here after entering." *Jennings*, 538 U.S. at 286. Justice Alito, writing for the majority, explained:
>
>> That process of decision generally begins at the Nation's borders and ports of entry, where the Government must determine whether an alien

19

> seeking to enter the country is admissible.
> Under § 302, 110 Stat. 3009–579, 8 U.S.C. §
> 1225, an alien who "arrives in the United
> States," or "is present" in this country but "has
> not been admitted," is treated as "an applicant
> for admission." § 1225(a)(1). Applicants for
> admission must "be inspected by immigration
> officers" to ensure that they may be admitted
> into the country consistent with U.S.
> immigration law. § 1225(a)(3).
>
> As relevant here, applicants for admission fall
> into one of two categories, those covered by §
> 1225(b)(1) and those covered by § 1225(b)(2).

*Id*. at 287 (quoting 8 U.S.C. § 1225). Read in context,
the quoted language clearly refers to the "process ...
at the Nation's borders and ports of entry." *Id*.; *see
also id*. ("As relevant here, applicants for admission
fall into one of two categories ..." (emphasis added)).
Any possible doubt about the Court's meaning is
erased by the Court's summary:

> In sum, U.S. immigration law authorizes the
> Government to detain certain aliens seeking
> admission into the country under §§ 1225(b)(1)
> and (b)(2). It also authorizes the Government
> to detain certain aliens already in the country
> pending the outcome of removal proceedings
> under §§ 1226(a) and (c).

*Id*. at 289. Thus, the government's argument that all
"[a]pplicants for admission fall into one of two
categories" under Section 1225 is inconsistent with
the broader statutory scheme and with the Supreme
Court's recent, clear explanation of that statutory
scheme.

*Ye v. Maldonado*, No. 25-cv-6417, 2025 WL 3521298, at *5 (E.D.N.Y. Dec. 8,

2025).

20

Tellingly, immigration authorities in Gualpa's NTA alleged, by checking a box, that he is: "an alien *present* in the United States who has not been admitted or paroled." Doc. 5–1, at 1 (emphasis added). Authorities did not check the box immediately above that box, which provides "You are an arriving alien." Respondents' choice amounts to a judicial admission that Gualpa is *not* an arriving alien. *See Hakopian v. Mukasey*, 551 F.3d 843, 846 (9th Cir. 2008) (explaining that allegations in a Notice to Appear, like those in a complaint, are judicial admissions); *see also Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 167 (2d Cir. 2003) ("the allegations in the Second Amended Complaint are judicial admissions by which [Plaintiff] was bound throughout the course of the proceeding") (internal quotation marks and alterations omitted)); *El Paso Nat. Gas Co. v. United States*, 750 F.3d 863, 876 (D.C. Cir. 2014); *Keller v. United States*, 58 F.3d 1194, 1198 n.8 (7th Cir. 1995).

Under the plain text of Gualpa's NTA, Gualpa was simply passively present in the United States without being admitted or paroled—and nothing more. "[A]s an immigrant arrested and detained while 'already in the country[,]' *Jennings*, 583 U.S. at 289, [Gualpa] falls … within § 1226(a)'s default rule," *Chavez*, 2025 WL 3187080, at *4.

Respondents do not clearly explain to whom they think Section 1226(a) might apply. They offer that it "is the only provision that governs the detention of aliens who, for example, lawfully enter the country but overstay or otherwise

violate the terms of their visas or are later determined to have been improperly admitted." Doc. 5, at 23–24. This is no doubt true. But it is also true that Section 1226(a) gives immigration judges broad discretion to permit or deny release on bond. And Section 1226(a) further "makes no distinction between admitted and unadmitted immigrants." *Chavez*, 2025 WL 3187080, at *5. The key is that Section 1226(a) makes discretionary bond available, rather than imposing mandatory detention.

Three final points. Respondents focus on the phrase "shall be detained" in relevant statutes and regulations to seemingly argue that the Government's hands are tied. *See* Doc. 5, at 17–20. But it has long been the case that, in the prosecutorial or agency enforcement context, the term *shall* can mean *may* or suggest discretion. *See Town of Castle Rock, Colorado v. Gonzales*, 545 U.S. 748, 760–61 (2005); *Heckler v. Chaney*, 470 U.S. 821, 831 (1985); *Richbourg Motor Co. v. United States*, 281 U.S. 528, 534 (1930); *Gratton v. Wildasin*, No. 21-5824, 2022 WL 3969833, at *2 (6th Cir. June 22, 2022). So *shall* does not necessarily carry the weight that Respondents suggest.

Second, immigration officials granted Gualpa employment authorization. Doc. 1-8, at 9. Applicable regulations provide that a grant of employment authorization is "[s]ubject to the restrictions contained in" the

asylum statute and Section 1226(a). 8 C.F.R. § 208.7(a)(1).[8] The regulation omits any mention of Section 1225.

Finally, during the pendency of Gualpa's petition, the Court ordered Respondents to explain Gualpa's status between July 2022 and July 30, 2025, when he was detained." Non-Document Order (Feb. 11, 2026). In that order, the Court instructed that Respondents:

> must further describe the nature of Petitioners status following his detention in July 2025. If Petitioner's status changed at or around the time he was initially detained, Respondents should further explain the mechanism for that change. If Petitioners status did not change, Respondents should so state.

*Id*.

Respondents replied but they failed to clarify Gualpa's status. *See* Doc. 6. Instead, they say that Gualpa "is … an alien present without admission and, consequently, an 'applicant for admission.'" *Id*. at 2. They add that "[h]e has remained an 'applicant for admission' since his illegal entry into the United

---

[8]     In full, the regulation says:

> Subject to the restrictions contained in sections 208(d) and 236(a) of the Act, an applicant for asylum who is not an aggravated felon shall be eligible pursuant to §§ 274a.12(c)(8) and 274a.13(a) of this chapter to request employment authorization.

8 C.F.R. § 208.7(a)(1). The referenced Act is the Immigration and Nationality Act. Section 208(d) is 8 U.S.C. § 1158(d) and Section 236(a) is 8 U.S.C. § 1226(a).

States, through the time of his detention in July 2025. No other status has been conferred on Petitioner." *Id*.

This is not exactly helpful. An attachment to Respondents' filing indicates that when he was encountered by authorities in July 2022, Gualpa "was processed for a Notice to Appear and released *on recognizance* as per" 8 U.S.C. § 1182(a)(6)(A)(i). Doc. 6-3, at 2 (emphasis added). The reference to Section 1182(a)(6)(A)(i) is difficult to reconcile, since that provision merely establishes that "[a]n alien present in the United States without being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the Attorney General, is inadmissible." It does not authorize release of an alien "on recognizance."

Without help from Respondents, it is unclear what statutory authority immigration officials exercised when they released Gualpa "on recognizance." As far as the Court can tell, the only statutory authority on which officials could have relied was the parole authority found at 8 U.S.C. §§ 1182(d)(5)(A) and 1226(a)(2)(B). As previously discussed, the Court has concluded that immigration authorities must have exercised their parole authority under Section 1182(d)(5)(A) when they released Gualpa. But if that is the case, and if, as Respondents now assert, Gualpa's status did not change when he was detained, it is unclear that Respondents took the required step of terminating Gualpa's parole before arresting him. *See* 8 C.F.R. § 212.5(e)(2)(i); *see also Mata Velasquez v. Kurzdorfer*, 794 F. Supp. 3d 128, 145–46 (W.D.N.Y. 2025).

24

In any event, because Gualpa should have been, but was not, considered for release on bond under Section 1226(a), the Court should grant his petition and order the immigration court to conduct a bond hearing.

### 4. *The Government Forfeited Any Opposition To Gualpa's Due Process Claim.*

Even if the Court finds that Gualpa is subject to mandatory detention under Section 1225(b)(2), it should grant his petition and direct the immigration court to conduct a bond hearing under the Fifth Amendment Due Process Clause. The Fifth Amendment right to due process applies to all persons, including noncitizens, who are present in the United States. *Zadvydas*, 533 U.S. at 693.

Generally, Gualpa claims that his continued detention absent a bond hearing represents a violation of his right to due process. Doc. 1, at 3, 24, 28–30. The Government, however, offers no response to Gualpa's due process claim. *See* Doc. 5. So the Government has forfeited any opposition to Gualpa's due process argument and, on that basis alone, the Court could find that he is entitled to habeas relief. As a result, even if the Government were correct that Gualpa should be subject to mandatory detention, the Court should grant Gualpa the relief he seeks.

Further, the merits of Gualpa's due process claim under the applicable balancing test justify relief. *See United States v. Silvestre-Gregorio*, 983 F.3d 848, 852 (6th Cir. 2020) (applying the balancing test established in *Mathews v.*

25

*Eldridge*, 424 U.S. 319 (1976)). Under this test the Court weighs: (1) the private interest that will be affected by the official action; (2) the risk of erroneous deprivation of that interest; and (3) the government's interest, including the fiscal and administrative burdens that the additional or substitute procedures entail. *See Mathews*, 424 U.S. at 335.

First, Gualpa's liberty is at stake. Second, the Government's position has been inconsistent. Gualpa was previously released and permitted to go about living for years in the United States during the pendency of his immigration proceedings before being detained in 2025. These contradictions tend to show that Gualpa is at risk of being erroneously deprived of his freedom. The second factor thus weighs in his favor.

Lastly, based on the information described throughout this recommendation, the Government has not and likely cannot show that it has any significant interest in Gualpa's continued detention. Indeed the fact that the Government's released Gualpa for several years weighs against any potential argument by the Government regarding this third factor.

Based on the Government's forfeiture of any challenge to Gualpa's due process claim and on the merits of Gualpa's due process claim, I recommend that that the Court grant Gualpa's Petition and that the immigration court be ordered to conduct a bond hearing.

26

**Conclusion**

Because Section 1225(b) is inapplicable to Gualpa, Respondents may not now impose mandatory detention pending his removal decision. I recommend that the District Court grant Gualpa's petition and require the immigration court to conduct a hearing to determine whether, consistent with this Court's determination, Gualpa is entitled to discretionary bond under Section 1226(a).[9]

Dated: February 18, 2026

*/s/James E. Grimes Jr.*
James E. Grimes Jr.
U.S. Magistrate Judge

**OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Court within 14 days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F.3d 520, 530–31 (6th Cir. 2019).

---

[9]    Granting the petition would serve to moot Gualpa's unopposed request for injunctive relief. The Court does not need to enjoin Gualpa's transfer to preserve its jurisdiction. *See Khalil*, 164 F.4th at 271 (relying on *Ex parte Endo*, 323 U.S. 283 (1944)).

27